UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FIRE EAGLE, LLC | CIVIL ACTION |
| VERSUS | NO. 08-1564 |
| RICHARD L. BISCHOFF, ET AL | SECTION "N" (2) |

# **O R D E R and R E A S O N S**

Before the Court are several motions:

(1) the **Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative to Dismiss for Improper Venue or Transfer Case (Rec. Doc. 47)**, brought by Defendants Stephen W. Gurasich, Jr, Robert H. West, Donald C. Walden, Morton L. Topfer, Alan Topfer and Richard Topfer (together, "Defendants").[1] The Motion is opposed by Plaintiff Fire Eagle, LLC ("Fire Eagle");

(2) the **Motion to Change Venue or Alternatively to Stay (Rec. Doc. 12)**, filed by Defendant Richard Bischoff ("Bischoff") and opposed by Fire Eagle;

(3) the **Motion for a Hearing on the Motion to Change Venue (Rec. Doc. 31)**, filed by Fire Eagle;

---

[1] Defendant Richard Bischoff is not among the movants of this motion.

(4) the **Motion for a Status Conference (Rec. Doc. 66)** and **Motion to Expedite (Rec. Doc. 67)**, filed by Fire Eagle.[2]

After reviewing the Amended Complaint, the memoranda, and the applicable law, the Court rules as set forth herein.

## I. BACKGROUND

Spillman Development Group, Ltd. ("SDG") is a Texas limited partnership that developed and operated the Falcon Head Golf Course in Texas. The course was primarily funded by two loans. The first loan was provided by American Bank of Texas ("ABT") in the original amount of $7,200,000 on November 20, 2001, with a later supplement of $900,000 on April 10, 2003 (the "ABT loan"). ABT is a Texas bank and all negotiations over the ABT loan were conducted in Texas, with payments delivered into Texas. The ABT loan is governed by Texas law, was secured by a first lien on property located in Travis County, Texas, and according to the loan documents was performable in Grayson County, Texas. The loan was also secured by various limited guaranties executed at different times by Defendants, all of whom are Texas residents. These guaranties are also governed by Texas law and are performable in Grayson County, Texas.

Fire Eagle, a Louisiana citizen, provided the second loan (the "Fire Eagle loan") to SDG for the golf course on November 21, 2001, in the amount of $4,100,000. The funding of this loan followed several months of negotiations that were kicked off when Stephen Gurasich and Donald Walden–along with Richard Bischoff, not a movant here–visited Fire Eagle's parent, the New

---

[2] Also pending before the Court but not under consideration here are the Motion to Dismiss (Rec. Doc. 69) filed by Bischoff and the Motion for Partial Summary Judgment (Rec. Doc. 70) filed by Fire Eagle against Bischoff.

Orleans Fire Fighter Pension & Relief Fund ("NOFF"), to propose that Fire Eagle finance the golf course that SDG was building in Texas. The loan documents that were eventually produced by this visit and subsequent negotiations named ABT as senior lender and Fire Eagle as junior lender, with mirroring provisions in the ABT loan documents. The ABT loan documents also an included a provision requiring SDG to utilize the proceeds from Fire Eagle's loan prior to tapping the funds from ABT. The Fire Eagle loan was negotiated in Louisiana with payments coming to Louisiana, and over the next several years various SDG partners and officers, including many of the Defendants, communicated about various matters with Fire Eagle. Among these communications was a request that, per the requirements of the original loan, Fire Eagle further subordinate itself to ABT when ABT supplemented its original loan. There is, however, no evidence of any communication between ABT and Fire Eagle regarding these loans, nor any evidence that SDG negotiated with ABT about the terms of the Fire Eagle loan, or vice versa.

In October 2004, as SDG began to encounter financial difficulties, it approached Fire Eagle with a menu of proposals to assist its faltering business, including a proposal that Fire Eagle assume the ABT loan and release both SDG's collateral and the Defendants' guaranties. Fire Eagle rejected the proposal, however, and on August 1, 2005, SDG filed for Chapter 11 bankruptcy protection in the Western District of Texas. That case is pending and the present Defendants are bankruptcy plaintiffs in the adversary suit there. Bischoff is not presently a plaintiff there, since the bankruptcy court overruled Fire Eagle's objection that Bischoff was an indispensable party on December 7, 2007, and subsequently allowed an adversarial proceeding to go forward without Bischoff on January 14, 2008.

Subsequently, Fire Eagle purchased the ABT loan after a competitive bidding process on

3

October 6, 2006, and now claims that it assumed ABT's status as lender and is entitled to enforce in this Court the Defendants' guaranties. Fire Eagle sued Bischoff in this Court on April 8, 2008, later amending its Complaint to add the additional Defendants on May 8, 2008. On December 9, 2008, Bischoff moved to intervene in the adversarial proceeding in Texas bankruptcy court, which motion is opposed by Fire Eagle and is presently pending before that court.

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that personal jurisdiction exists. *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When a court rules on this issue without a full evidentiary hearing, plaintiffs need only make a prima facie showing of jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). In determining whether plaintiffs have made a prima facie showing of jurisdiction, the Court accepts as true the allegations in the complaint, unless controverted by opposing affidavits, and resolves all factual conflicts in favor of the plaintiff. *Id.* In making its determination, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of . . . recognized [discovery] methods." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *See Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute

extends jurisdiction to the full limits of due process, *see* LA. REV. STAT. § 13:3201(B), the Court must determine only whether the exercise of its jurisdiction in this case satisfies federal due process requirements. The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts may give rise either to "specific" personal jurisdiction or "general" personal jurisdiction. *See id.* Specific jurisdiction exists when a plaintiff's cause of action arises from or is related to the defendant's minimum contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Wilson*, 20 F.3d 644 at 647. General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contact with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state. *See Helicopteros*, 466 U.S. at 414 n.9; *Wilson*, 20 F.3d at 647. This case presents only the question of specific jurisdiction.

To determine whether specific jurisdiction exists, courts examine whether the defendant purposefully availed himself of the privileges of conducting activities in the forum state, and whether the cause of action arises out of or relates to those activities. *See Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999); *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547-48 (5th Cir. 1985). A defendant's connection with the forum state must be such that he "should reasonably anticipate being haled

5

into court" there. *Latshaw*, 167 F.3d at 211 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether specific jurisdiction exists, the Fifth Circuit has developed a three-step analysis. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). The Court must look to (1) whether the defendant had minimum contacts and purposefully directed its activities toward the forum state or purposefully availed itself of conducting activities there; (2) whether the cause of action arises out of defendant's contacts with the forum state; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Id.* (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

The fact that a plaintiff entered into a contract with an out-of-state party cannot by itself establish personal jurisdiction. *Burger King Corp. v. Ruzeqics*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). "But, when a nonresident defendant voluntarily enters into a contract which contemplates business activity by a forum-state entity foreseeable to the nonresident defendant, such action establishes a minimum contact sufficient for a valid exercise of jurisdiction over the nonresident defendant." *Consolidated Cos., Inc. v. Kern*, 2000 WL 1036186, at *3 (E.D. La. 2000) (citing *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982)). In a breach of contract case, among the factors that a court should consider in determining whether there has been purposeful availment are prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing. *Stuart*, 772 F.2d at 1193 (citing *Burger King*, 471 U.S. at 479).

Once a court determines that a plaintiff's cause of action arose out of defendant's

minimum contacts with the forum state, that court will next consider whether asserting specific jurisdiction offends "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. This prong of the analysis requires consideration of "the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities." *Stuart*, 772 F.2d at 1191 (quoting *Southwest Offset, Inc. v. Hudco Publ'g Co.*, 662 F.2d 149, 152 (5th Cir.1980)).

The Court concludes that in the instant case, Plaintiff has not established that its claim "arises out of [Defendants'] contacts with the forum state" within the meaning of the second prong of the *Seiferth* test. *Seiferth,* 472 F.3d at 271. As a starting matter, it is clear that Fire Eagle's purchase of the ABT loan does not, by itself, create the minimum contacts sufficient for this Court to exercise its jurisdiction over Defendants. *See Stuart*, 772 F.2d at 1190 ("The unilateral activity of those who claim some relationship with a nonresident defendant, however, cannot satisfy the requirement of contact with the forum state.") (citations omitted); *see also Moncrief Oil Int'l, Inc. v. Oao Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (same). Plaintiff argues instead that Defendants committed seven separate acts that establish "minimum contacts" with Louisiana such that this Court can properly exercise its jurisdiction over the Defendants. These acts are

> (1) initiating a proposal before the board of NOFF to seek financing; (2) traveling to New Orleans, Louisiana in order to present, discuss, and solicit funding from NOFF; (3) obtaining a loan from NOFF/Fire Eagle to SDG; (4) after the loan was funded, traveling to New Orleans to report to Fire Eagle and the NOFF board on the construction and progress of the development; (5) meeting in New Orleans to seek a modification of loan terms and/or forbearance of interest payments; (6) receipt of funds transferred from NOFF's bank in Louisiana; and (7) the closing documents were executed, in part, in Louisiana.

7

Amend. Compl. at ¶ 14. Plaintiff points to a list of more than 50 documents as evidence of the extensive contacts the Defendants, largely through SDG, had with Fire Eagle in Louisiana, and notes that this is only a partial list, since many additional documents were destroyed during Katrina. *See* Opp. at 5-6. The difficulty for Plaintiff is that these communications, and the other acts Plaintiff points to, are all in reference to the original Fire Eagle loan to SDG–the loan that was junior to the ABT loan–and *not* the ABT loan for which these Defendants executed guaranties and which is the subject of the Amended Complaint. In essence, Plaintiff attempts to bootstrap the contacts relating to the Fire Eagle loan onto the ABT loan. It does so by arguing that these two loans constituted "one transaction," pointing to the contemporaneous nature of the execution and the fact that each loan "contemplated" the existence of the other loan, especially in the mirrored provisions setting relative priority.

The Court rejects Plaintiff's contention. As a starting matter, Plaintiff cites to several cases suggesting that contracts composed of several documents must be construed as a single, unified instrument. These cases, however, are inapposite, since they concern instances where the *same parties* contemporaneously executed several different documents that courts construe as one contract. *See Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Bristol-Myers Squibb Co. v. Barner*, 964 S.W.2d 299, 302 (Tex. App. 1998). Plaintiff cites to no cases suggesting that contracts signed contemporaneously between *different parties*, even if they deal with the same broad subject matter, should be construed as one contract. Nor has the Court, in its own independent research, found any case suggesting such–and in fact, the weight of precedent seems to suggest the opposite. *See, e.g.*, *Arciniaga v. General Motors Corp.*, 460 F.3d 231, 237 (2d Cir. 2006) (not one transaction because different parties); *Rudman v. Cowles*

8

*Comm'ns, Inc.*, 280 N.E.2d 867 (N.Y. 1972) (same); *Skimin v. Fuelgas Co.*, 64 N.W.2d 666, 668-69 (Mich. 1954) (same).

Further, the fact that both loan documents mention that ABT would be the senior lender and Fire Eagle the junior lender do not suffice to make the two loans "one transaction." Such provisions, setting out the priority of lenders, are not uncommon in multi-party financing deals. Presumably, Fire Eagle priced its junior status into its terms for the loan. But absent some evidence that the parties intended the loans to be one transaction–such as negotiations between ABT and Fire Eagle, an executed partnership agreement, or indeed, any communication at all between the two lenders–the Court cannot, on the strength of such a provision alone, find that Defendants' undisputed contacts with Louisiana for purposes of negotiating and servicing the Fire Eagle loan support the exercise of this Court's jurisdiction over Defendants on a claim arising from the ABT loan.

Finally, SDG's October 2004 proposal that Fire Eagle assume the ABT loan does not suffice to establish minimum contacts. As an initial matter, it should be noted that the proposal sent to Fire Eagle is signed by Richard Bischoff only; none of the other guarantors appear anywhere in the document. *See* Opp. at Ex. 50. Plaintiff argues that Stephen Gurasich sent a "followup" letter, which was cc'ed to Donald Walden and Robert West. This letter was actually sent in January 2006, after SDG had entered into Chapter 11 bankruptcy, and only referenced in passing the earlier proposal, so characterizing the letter as a "followup" to the proposal stretches matters considerably. Regardless, Plaintiff has offered no evidence that any person other than Bischoff–who is not a party to the instant motion–had any involvement in making the proposal. Even if such evidence exists, the Court is skeptical that a proposal to assume loans and wipe out

guaranties, sent into Louisiana and rejected by the recipient, is sufficient to show that the Defendants had minimum contacts with the forum state sufficient to support a suit on those same guaranties.

**B. Motion to Change Venue or to Stay**

Defendant Richard Bischoff has moved to transfer this case to the Western District of Texas or alternatively to stay these proceedings pending resolution of the issues presented in this case in the Western District. The decision of whether to transfer a case pursuant to 28 U.S.C. § 1404(a) is committed to the sound discretion of the district court. *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). In determining whether transfer is proper under 28 U.S.C. § 1404(a), courts consider both private interest and public interest factors. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 241 n.6. The public interest factors to be considered include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Finally, "while neither conclusive nor determinative," in the Fifth Circuit "the plaintiff's choice of forum is clearly a factor to be considered." *In re Horseshoe Entertainment*, 337 F.3d 429, 434-35 (5th Cir. 2003). The plaintiff's choice of forum places a "good cause" burden on the defendant who seeks the transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). This "good cause"

burden is met when the moving party can "satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (quotation omitted).

In the instant case, the Court concludes that the sound exercise of its discretion requires denying the Motion to Change Venue or to Stay without prejudice as to Bischoff's ability to bring the same motion should the Texas bankruptcy court grant his motion to intervene. The Court is aware of the arguments in favor of granting the requested transfer or stay and especially notes the maturity of the proceedings in Texas, the possibility of piecemeal litigation, and the likelihood that the Texas court will resolve many of the same issues under consideration here, which raises the prospect of conflicting judgments. Such considerations would, in other cases, militate in favor of granting the motion or at least staying these proceedings in favor of further developments in Texas. However, given the Texas court's apparent concern that it does not have jurisdiction over Bischoff, the Court is unwilling to grant the motion and thereby leave Plaintiff with no forum in which to pursue its claims, especially given the deference accorded a plaintiff's choice of forum in this Circuit.

### III. CONCLUSION

Considering the foregoing, **IT IS ORDERED** that:

(1) the Motion to Dismiss for Lack of Personal Jurisdiction (Rec. Doc. 47) is **GRANTED**; and

(2) the Motion for Status Conference (Rec. Doc. 66) and Motion to Expedite Motion for Status Conference (Rec. Doc. 67) are **DENIED AS MOOT** in light of the recent telephone conference held in this matter; and

(3) the Motion for a Hearing on the Motion to Change Venue (Rec. Doc. 31) is **DENIED**; and

(4) the Motion to Change Venue or Alternatively to Stay (Rec. Doc. 12) is **DENIED WITHOUT PREJUDICE**.

New Orleans, Louisiana this 25th day of March 2009.

_____
**KURT D. ENGELHARDT**
**United States District Judge**