UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FIRE EAGLE, LLC** | * | **CIVIL ACTION NO. 08-CV-1564** |
|       Plaintiff | * | |
| **VERSUS** | | **JUDGE ENGELHARDT** |
| | * | **SECTION "N"** |
| **RICHARD L. BISCHOFF, ET AL.** | | |
|       Defendants | * | **MAGISTRATE JUDGE WILKINSON** |
| * * * * * * * * * * * | * | **MAG. DIV. (2)** |

MAY IT PLEASE THE COURT:

The Motion to Reconsider [Doc. No. 87] submitted by Fire Eagle, LLC ("Fire Eagle") should be denied because it fails to present any new evidence or manifest errors of fact or law. "To succeed on a motion for reconsideration, a party must "'clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" <u>Town of Gramercy v. Blue Water Shipping Servs.</u>, 2009 WL 580445 (E.D.La. Mar. 4, 2009) (Engelhardt, J.) (citations omitted). A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." <u>In re FEMA Trailer Formaldehyde Prods. Liability Litigation</u>, 2008 WL 5115881 (E.D.La. Nov. 26, 2008)

1

(Engelhardt, J.) (citation omitted).

"Generally, there are four grounds upon which a Rule 59(e) motion can be granted: (1) to correct manifest errors of law or fact upon which judgment is based, (2) the availability of new evidence, (3) the need to prevent manifest injustice, and (4) an intervening change in controlling law." Id. (citation omitted). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." 11 Charles A. Wright et. al., Federal Practice and Procedure: Civil 2d. § 2803, at pp. 46-47 (1995). Additionally, courts should consider the goal of promoting finality of judgments. See In re FEMA Trailer Formaldehyde Prods. Liability Litigation, 2008 WL 5115881 at *1.

Fire Eagle has not, and cannot, meet its burden of proving any grounds for reconsideration. As a preliminary matter, although Fire Eagle does not recite any standard for determining whether reconsideration is appropriate, it is apparent from a review of Fire Eagle's Motion for Reconsideration and Memorandum in Support that its arguments are directed only at the first consideration concerning manifest errors of law and fact. Fire Eagle does not argue that there is any "new" evidence[1] that requires reconsideration. Moreover, it does not argue that

---

[1] To the contrary, Fire Eagle argues that "facts previously presented to the Court show minimum contacts . . . ." [Fire Eagle's Memorandum in Support, p.3]. Although Fire Eagle does not argue reconsideration should be granted based upon newly discovered evidence, Fire Eagle does attach to its Memorandum in Support two exhibits never previously submitted to this Court. The first document is an unauthenticated (and thus inadmissible) agreement dated October 29, 2001, and unsigned by any of the Defendants. The second document is an excerpt of a deposition taken on January 27, 2009. Both documents were obviously available to Fire Eagle well in advance of this Court's ruling on March 25, 2009 (and Fire Eagle makes no argument they were not). Yet, Fire Eagle never submitted them to the Court or advised the Court of the need to consider them—not even at the Court's March 18, 2009 status conference. [Doc. No. 84]. While Defendants strongly maintain these documents are irrelevant (or favorable to Defendants), they object to their inclusion in the record of this matter at this late date. Respectfully, this Court should decline to consider these documents and any arguments related to

reconsideration is necessary to account for an intervening change in controlling law, or to prevent manifest injustice. Rather, Fire Eagle argues that the Court applied the wrong legal standard and erred in making factual conclusions. Fire Eagle's arguments are meritless. Moreover, in this instance, finality of this judgment is an important consideration. As discussed, below, Fire Eagle has unfairly subjected Defendants[2] to expensive and burdensome litigation in multiple venues. The exact same issues presented to this Court have already been decided in Defendants' favor multiple times in Texas.

**(1) This Court Applied the Correct Burden of Proof.**

Fire Eagle first argues that the Court failed to consider the *prima facie* evidence standard and failed to resolve all relevant factual disputes in plaintiff's favor as required by Sieferth v. Helicopteros Atuneros, Inc., 427 F.3d 266 (5th Cir. 2006). To the obvious contrary, this Court cited the appropriate standard on page 4 of its Order and Reasons. Fire Eagle misconstrues the oft-cited statement that courts resolve all *relevant* factual disputes in the plaintiff's favor as requiring *any* factual dispute to be decided in plaintiff's favor. This, of course, is not the law. Moreover, the allegations in Fire Eagle's complaint need only be accepted as true if they are uncontroverted. [Order and Reasons, p.4]. Here, through declarations, Defendants squarely controverted Fire Eagle's allegations, including the seven separate acts that allegedly constituted "minimum contacts" set for the in paragraph 14 of Fire Eagle's First Amended Complaint on Promissory Notes and Continuing Guaranties (the "Amended Complaint"), [Doc. No. 8].

---

them. See, e.g., Mercadel v. Liberty Mut. Fire Ins. Co., 2008 WL 4937577 (E.D.La. Nov. 17, 2008) (Engerlhardt, J.) (declining to consider on motion for reconsideration deposition that movant failed to submit in supplemental memoranda prior to Court's ruling).

[2] "Defendants" includes all defendants except defendant Richard L. Bischoff, who is represented by separate counsel in this matter and who is referred to herein separately as Mr. Bischoff.

3

### (2) This Court Properly Applied the <u>Seiferth</u> Test.

In its Order and Reasons, the Court concluded that Fire Eagle did not satisfy the second prong of the <u>Seiferth</u> test, which requires Fire Eagle to establish that its claim "arises out of [Defendants'] contacts with the forum state." In this case, Fire Eagle claims that Defendants are liable on guaranties of senior loan indebtedness incurred by Spillman Development Group, Ltd. ("SDG") to American Bank of Texas ("ABT"). [<u>See</u>, <u>e.g.</u>, Amended Complaint, ¶ 16]. Fire Eagle's claim against the individual Defendants for breach of guaranties of the ABT notes simply bears no relationship to Fire Eagle's status as a junior lender to SDG.

It is telling that, of the 62 allegations in Fire Eagle's Amended Complaint, the *only* time the junior loan to Fire Eagle is mentioned is in paragraph 14 of the Amended Complaint, which is the paragraph where Fire Eagle sets forth its seven purported acts that establish minimum contacts.[3] Thus, Fire Eagle did not even plead a single fact in its Amended Complaint related to the junior loan in support of its causes of action against Defendants. Fire Eagle cannot credibly claim that its action to enforce guaranties of the ABT notes arises out of Defendants' purported contacts with the forum state concerning Fire Eagle's junior loan. The only connection between the limited guaranties signed by Defendants and Louisiana is that Fire Eagle, a Louisiana company, voluntarily purchased the ABT Notes in October 2006, during the Texas bankruptcy of SDG.

The absurdity of Fire Eagle's contention that Defendants should now be subjected to this Court's jurisdiction is highlighted by the fact that ABT <u>never</u> could have sued Defendants in a

---

[3] Similarly, of the 13 voluminous exhibits Fire Eagle attached to its Amended Complaint,

4

NO ABZ 222474 v1
2911372-000001

Louisiana court over the guaranties at issue. It, therefore, defies logic to suggest that Defendants could be haled into court in Louisiana over the guaranties merely because Fire Eagle purchased the ABT Notes in Texas after SDG filed for bankruptcy in Texas. Defendants simply have never availed themselves of the laws of Louisiana concerning the guaranties at issue (which are governed by Texas law), and never could have reasonably anticipated being sued in Louisiana for enforcement of these guaranties executed in Texas, between Texas residents, and to be performed in Texas. Fire Eagle, through its voluntary action of purchasing the ABT Notes in Texas and then credit bidding those notes in the Texas bankruptcy proceeding, cannot create specific personal jurisdiction over Defendants in Louisiana. The suggestion that Defendants can be sued in Louisiana for enforcement of the guaranties is unreasonable and directly contradicts and offends traditional notions of fair play and substantial justice.

Moreover, this Court observed in its Order and Reasons the direct link between Fire Eagle's claims and the State of Texas:

> ABT is a Texas bank and all negotiations over the ABT loan were conducted in Texas, with payments delivered to Texas. The ABT loan is governed by Texas law, was secured by a first lien on property located in Travis County, Texas, and according to the loan documents was performable in Grayson County, Texas. The loan was also secured by limited guaranties executed at different times by Defendants, all of whom re Texas residents. These guaranties are governed by Texas law and are performable in Grayson County, Texas.

[Order and Reasons, p.2]. Notably, Fire Eagle does not challenge any of these findings in its Motion for Reconsideration, let alone assert that they are manifestly erroneous.

Instead, Fire Eagle continues to make wholly unsupportable allegations of irrelevant facts. For example, Fire Eagle makes the *new argument* that "[t]he guarantors were at all times managing the debtor in possession in Texas, which forced the purchase by Fire Eagle of the first

---

none relates to the junior loan by Fire Eagle to SDG.

position debt under the intercreditor agreement." First, there is no evidence in the record of the broad and conclusory statement that the Defendants managed the debtor-in-possession. Second, even if they did, so what? As Fire Eagle observes, the debtor-in-possession was being managed *in Texas* under the supervision of the Texas bankruptcy court. Third, it is ludicrous and unsupportable with any evidence in the record to argue that the Defendants "forced the purchase by Fire Eagle of the ABT notes." Fourth, the entire allegation is irrelevant to any claim being asserted in the Amended Complaint by Fire Eagle.

Without citing any legal authority, Fire Eagle also argues that the Fire Eagle and ABT notes are "dependent on each other for their existence," that "each loan would not have been made without the other," and that Fire Eagle is a third-party beneficiary of the loan between ABT and SDG (an entirely new argument). First, there is no evidence in the record to support the unfairly vague statement that the Fire Eagle and ABT notes are "dependent on each other for their own existence." Second, there is no evidence in the record that the Fire Eagle and ABT notes "would not have been made without each other." Such a statement is completely speculative and unsupportable. Third, there is no evidence in the record of the argument that Fire Eagle is a third-party beneficiary of the ABT notes. Fourth, none of the foregoing is relevant to any of the claims asserted in the Amended Complaint. Under <u>Seiferth</u>, the Court may only consider those contacts with Louisiana by these individual Defendants that give rise to the claims in the Amended Complaint. Fifth, these arguments, if accepted, would expand the law of personal jurisdiction to the point that it is meaningless. For example, consider construction of a building in Texas which obviously will require a foundation and a roof. The fact the contract concerning the roof arose in Louisiana does not mean that an individual who guaranteed payment to a Texas contractor responsible for the foundation is suddenly subject to personal jurisdiction

in Louisiana. That both contracts were necessary to construct the building is of no moment to the analysis of personal jurisdiction.

Fire Eagle also rehashes an old argument—that a presentation by defendant Richard Bischoff somehow gives rise to personal jurisdiction in Louisiana over Defendants. Even if the Court accepted all of Fire Eagle's factual allegations regarding this presentation by Mr. Bischoff, it still could not give rise to personal jurisdiction over Defendants. The Seiferth test requires Fire Eagle to establish that its claim "arises out of [Defendants'] contacts with the forum state." A workout effort to try to avoid the bankruptcy of SDG has nothing to do with the claims asserted by Fire Eagle in the Amended Complaint. Of course, no agreement was reached, and it is undisputed that *Fire Eagle's representatives went to Austin, Texas to receive this presentation* by Mr. Bischoff. So, Fire Eagle is trying to argue that a presentation made in Texas by Mr. Bischoff, *which resulted in no agreement*, supports exercising personal jurisdiction over Defendants in Louisiana. Fire Eagle goes so far as to say that this presentation "alone should satisfy the requirements for establishing personal jurisdiction over the defendants." [Fire Eagle's Memorandum in Support, p.12]. The argument is meritless, and certainly does not warrant a finding that the Court's prior ruling was manifestly erroneous.

### (3) Defendants Have Been Unfairly Subjected to Expensive and Duplicative Litigation in Multiple Forums Over the Same Issues, Suggesting a Strong Need for Finality.

The parties have previously informed the Court that the same issues Fire Eagle presents to this Court are the subject of litigation in Texas. Fire Eagle's strategy of delaying the Texas proceeding[4] and simultaneously attempting to collaterally attack the Texas courts' rulings in this

---

[4] For example, on April 30, 2008, Fire Eagle filed a Motion to Withdraw the Reference, asking the Texas District Court to preside over the adversary proceeding, which motion was denied. On the same day Fire Eagle filed its motion to withdraw the reference, it filed in the

7

Court has resulted in an unnecessary and substantial increase in the cost of litigation to Defendants and a waste of judicial resources for the sole purpose of forum shopping by Fire Eagle. Such waste makes this case an ideal candidate for due consideration of the need for finality of judgments—a consideration when deciding whether a Court should exercise its discretion to reconsider a matter.

As this Court is aware, the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court") issued its Order and Memorandum Opinion on January 29, 2009 concluding that the senior loan to ABT has been paid and that Defendants are not liable to Fire Eagle under any guaranties. [January 29, 2009 Memorandum Opinion, p.34; see Doc. No. 79

---

Texas Bankruptcy Court "Fire Eagle's Rule 12(b) Motions to Dismiss for (1) Motion to Withdraw the Reference, (2) Lack of Subject Matter Jurisdiction/Abstention, (3) Improper Venue, (4) Failure to State a Claim Upon Which Relief Can Be Granted, and Alternatively (5) Motion to Sever and Incorporated Memorandum." The Texas Bankruptcy Court issued its Memorandum Opinion on September 2, 2008 denying the motions, and ruled the adversary proceeding was a core matter. Fire Eagle appealed the Texas Bankruptcy Court's ruling to the Texas District Court. By Order dated November 4, 2008, the Texas District Court entered an Order denying Fire Eagle's Motion for Leave to Appeal, granting the Defendants' Motion to Strike Fire Eagle's Notice of Appeal, and dismissing Fire Eagle's appeal.

Fire Eagle has filed numerous other meritless motions that have only served to delay the Texas proceedings and increase the cost of the litigation. Fire Eagle has, for example, filed the following other motions in the Texas Bankruptcy Court:

    a)     Motion of Fire Eagle, LLC for Extension of Time filed on March 10, 2008;
    b)     Motion for Extension of Time to File Appeal Under Rule 8002 filed on September 9, 2008, and Supplemental Motion for Extension of Time to File Appeal filed on September 9, 2008;
    c)     Motion and Memorandum for Stay Pending Appeal and for Approval of the Supersedeas Cash Bond filed on October 9, 2008; and
    d)     Motion and Memorandum for More Definite Statement filed on October 13, 2008.

Fire Eagle's motion for a more definite statement in the Texas adversary proceeding is among the more egregious filings made given the detailed and lengthy allegations in the adversary proceeding complaint and the obvious familiarity of the parties and the Texas Bankruptcy Court with the issues. On October 29, 2008, the Texas Bankruptcy Court denied the motion, noting that Fire Eagle's "Motion and Memorandum for More Definite Statement appear more to be an attempt to stall rather than address the substantive issues in the Complaint." [See Doc. Nos. 64 & 68].

NO ABZ 222474 v1
2911372-000001

(attaching January 29, 2009 Order and Memorandum Opinion]. Demonstrating Fire Eagle's penchant for seeking reconsideration of matters, on February 6, 2009, Fire Eagle filed before the Texas Bankruptcy Court a Motion to Reconsider. Fire Eagle subsequently filed a Supplemental Motion to Reconsider or for New Trial on February 9, 2009, and a Second Supplemental Motion to Reconsider on March 13, 2009.

On April 15, 2009, the Texas Bankruptcy Court denied Fire Eagle's various motions.[5] The Bankruptcy Court found that "Fire Eagle's argument is simply specious" and that Fire Eagle is "attempt[ing] to interject extraneous and irrelevant facts into what is a very simple event that occurred in open court . . . ." [Memorandum Opinion, p.7]. The Bankruptcy Court further explained that "Fire Eagle's Motion to Reconsider (along with its Supplemental Motions to Reconsider) are without merit of any sort." [Memorandum Opinion, p.10]. The Bankruptcy Court summed up its Memorandum Opinion as follows:

> Fire Eagle bought the golf course. It paid more than the Senior Debt in its §363(k) bid. It somehow feels it can now collect a SECOND TIME on the SENIOR DEBT by taking the SIG CD and enforcing the guaranties. Such a position is simply ludicrous. No party is claiming the guaranties were unenforceable. The claim is that the SENIOR DEBT that they guaranteed has been PAID. AND, IT HAS BEEN. It is fairly basic horn book law that one can only collect on an indebtedness ONCE.

[Memorandum Opinion, p.10].

Defendants respectfully request that the Court give due regard to the need for finality of the judgments of this Court and the Texas Bankruptcy Court. The parties will seemingly never reach a final judgment in either court if Fire Eagle is allowed to continue its practice of filing dilatory motions.

---

[5] A copy of the Bankruptcy Court's Order and Memorandum Opinion are attached hereto as Exhibits "A" and "B," respectively.

## CONCLUSION

Fire Eagle cannot meet its burden of proving any of the factors considered for granting a Rule 59(e) motion for reconsideration. It has not clearly established either a manifest error of law or fact and has not presented newly discovered evidence. Moreover, there is no basis for arguing that the Court's ruling on personal jurisdiction creates manifest injustice. Aside from the fact the ruling is correct, this is particularly true in this case because Fire Eagle has been given ample opportunity to litigate these same claims in Texas, where its claim arose. Fire Eagle's request that this Court reconsider its Order and Reasons serves only to further delay resolution of this dispute and increase the attorneys' fees and costs incurred by Defendants.

Respectfully Submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

By: /s/ Adam B. Zuckerman
ROY C. CHEATWOOD, T.A. (#4010)
ADAM B. ZUCKERMAN (#25943)
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-5200
Facsimile: (504) 636-4000

**ATTORNEYS FOR DEFENDANTS, STEPHEN W. GURASICH, JR., ROBERT H. WEST, DONALD C. WALDEN, MORTON L. TOPFER, ALAN TOPFER, AND RICHARD TOPFER**

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2009, a copy of the foregoing has been forwarded to all counsel of record using the CM/ECF system and/or, as appropriate, via United States Mail, properly addressed and first-class postage prepaid.

/s/ Adam B. Zuckerman