UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FIRE EAGLE, LLC | CIVIL ACTION |
| VERSUS | NO. 08-1564 |
| RICHARD L. BISCHOFF, ET AL | SECTION "N" (2) |

# <u>O R D E R and R E A S O N S</u>

Before the Court is the **Motion for Reconsideration (Rec. Doc. 87)**, filed by Plaintiff Fire Eagle, LLC, pursuant to Federal Rule of Civil Procedure 59(e). Plaintiff prays that this Court alter its Order of March 25, 2009 (Rec. Doc. 86) (hereinafter "March 25th Order"), wherein the Court granted certain Defendants' motion to dismiss for lack of personal jurisdiction.[1] After reviewing the memoranda and the applicable law, the motion is denied as set forth herein.

## I. BACKGROUND

The factual background of this case is adequately described in the March 25th Order and the Court will proceed directly to its analysis.

---

[1] Defendant Richard Bischoff was not among the movants of the motion that Plaintiff urges the Court to reconsider. For purposes of the instant Order, "Defendants" refers to Stephen W. Gurasich, Jr, Robert H. West, Donald C. Walden, Morton L. Topfer, Alan Topfer, and Richard Topfer.

## II. ANALYSIS

### A. Legal Standard and Procedural History

A district court has considerable discretion to grant or deny a motion for reconsideration. *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). A Rule 59(e) motion is an extraordinary remedy and is seldom granted. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Such a motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised prior to the entry of judgment." *Id.* Rather, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* The Fifth Circuit has "held that an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Id.*

The Defendants in this case moved to dismiss for lack of personal jurisdiction. *See* Rec. Doc. 47. Plaintiff opposed the motion on grounds that the Court had specific jurisdiction over the Defendants based on numerous contacts they had with the state of Louisiana. *See* Rec. Doc. 53. In its March 25th Order, the Court granted the motion to dismiss as to the present Defendants on grounds that the suit did not arise out of Defendants' contacts with the forum state. "The difficulty for Plaintiff," the Court concluded,

> is that these communications, and the other acts Plaintiff points to, are all in reference to the original Fire Eagle loan to SDG–the loan that was junior to the ABT loan–and *not* the ABT loan for which these Defendants executed guaranties and which is the subject of the Amended Complaint. In essence, Plaintiff attempts to bootstrap the contacts relating to the Fire Eagle loan onto the ABT loan.

March 25th Order, at *7. In the instant motion, Plaintiff claims that the Court committed legal

2

error in two ways: first, by not resolving relevant factual disputes in Plaintiff's favor in regards to its claim that the two loans used to fund the Falcon Head Golf Course were "one transaction," and second, by not resolving factual disputes concerning the October 2004 Bischoff presentation to Fire Eagle in Plaintiff's favor.

**B. "One Transaction" Claim**

In its opposition to the original motion to dismiss, Plaintiff argued that "the Fire Eagle loan to SDG and the ABT [i.e., American Bank of Texas] loans to SDG constitute one transaction" since "contracts may be composed of several documents which must be construed as a single, unified instrument." Opp. at 11 (Rec. Doc. 53). The Court rejected this argument on grounds that there was no legal support for the proposition that separate contracts between separate parties could be construed as one transaction, *see* March 25th Order, at *8-9, and to the extent that Plaintiff re-urges the argument in the instant motion, the Court rejects it again.

In the instant motion, however, Plaintiff shifts its argument and avers that "the lenders were recited to be third party beneficiaries of the rights of the Spillman Development Group [SDG] under the Spillman Ranch Cooperation Agreement." Mot. at 3 (Rec. Doc. 87). Through the course of Plaintiff's brief, the argument shifts yet again, and Plaintiff later avers that "ABT is a third party beneficiary of the loan between Fire Eagle and SDG. Similarly, Fire Eagle is a third party beneficiary of the loan between ABT and SDG." Mot. at 9 (Rec. Doc. 87). Either contention, Plaintiff argues, raises factual issues that must be resolved in its favor on a motion to dismiss.

To begin with, the Court notes that both arguments were raised for the first time on motion for reconsideration and thus neither are properly before the Court, since such a motion is

not to be used to raise arguments that could have been presented in the original motion. However, the Court need not rely solely on this procedural point, since the first contention is irrelevant and the second is unsupported by the documents in this case.

As to the first contention, it is irrelevant whether ABT and Fire Eagle are third party beneficiaries of the cooperative agreement setting forth the conditions under which SDG would manage the golf course. The cooperative agreement referenced in Exhibit 11 of Plaintiff's original opposition, *see* Opp. at Ex. 11 (Rec. Doc. 53), is a separate contract from the loan agreements that are the basis of the instant suit.[2] The fact that two separate lenders would be named as third party beneficiaries to the agreement governing management of the golf course they are financing is unremarkable and has no bearing on whether the two loans themselves are together "one transaction." Plaintiff cites to no statutory or jurisprudential authority in support of this argument and the Court rejects the evidence Plaintiff points to as irrelevant even if established.

On the second issue, Plaintiff argues that both lenders are third party beneficiaries of the other lender's loan because "[t]he loans made by Fire Eagle and ABT are dependent upon each other for their own existence." Mot. at 9 (Rec. Doc. 87). Plaintiff points to a provision in the ABT-SDG loan agreement requiring SDG to expend Fire Eagle's funds prior to the funds from ABT's loan, save for the initial advance. *See* Opp. at Ex. 27 (Rec. Doc. 53) (SDG-ABT loan agreement, §3.2(w)). Plaintiff also cites to provisions in the Fire Eagle-SDG loan agreement

---

[2] It should be noted that though this cooperative agreement is referenced in a letter attached to Plaintiff's opposition to the original motion to dismiss, the actual agreement has never been produced in this record.

requiring Fire Eagle to subordinate its lien in the golf course to that of ABT's. *See* Opp. at Ex. 28 (Rec. Doc. 53) (Fire Eagle-SDG loan agreement, §§10.1, 10.2).

It may or may not be true that the two loans "are dependent upon each other," but this is not the standard for determining third party beneficiary status. The Texas Supreme Court discussed that state's law of third party beneficiaries[3] in *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (citations omitted).:

> The fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract. A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit.
> To qualify as one for whose benefit the contract was made, the third party must show that he is either a donee or creditor beneficiary of, and not one who is benefitted only incidentally by the performance of, the contract. One is a donee beneficiary if the performance promised will, when rendered, come to him as a pure donation. If, on the other hand, that performance will come to him in satisfaction of a legal duty owed to him by the promisee, he is a creditor beneficiary. As the court of appeals noted, this duty may be an "indebtedness, contractual obligation or other legally enforceable commitment" owed to the third party.
> In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling. A court will not create a third-party beneficiary contract by implication. The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied. Consequently, a presumption exists that parties contracted for themselves unless it "clearly appears" that they intended a third party to benefit from the contract.

There are several initial difficulties with the Plaintiff's contention that it is a third party

---

[3] Plaintiff did not discuss the standard for third party beneficiary status in its brief nor did it clarify what body of law applies in this instance. The Court presumes that Texas law would apply to this issue as the SDG-ABT contract is governed by Texas law. Even if the Court were to apply the Louisiana law of third party beneficiaries, as articulated by the Louisiana Supreme Court in *Joseph v. Hospital Service Dist. No. 2 of the Parish of St. Mary*, 939 So.2d 1206, 1212 (La. 2006), the outcome would not be different.

beneficiary of the SDG-ABT loan agreement. First, it is not at all clear that Fire Eagle's status as a third party beneficiary is "clearly and fully spelled out" in the provisions of either loan. In this regard, the Court contrasts the clarity of the intent to make Fire Eagle and ABT third party beneficiaries of the cooperative agreement, *see* Opp. at Ex. 11 (Rec. Doc. 53), with the lack of such clear and precise language in either loan agreement. Nor has Plaintiff cited any cases suggesting that, were the Court to accept that Fire Eagle was a third party beneficiary of the SDG-ABT loan, that fact supports a finding of jurisdiction over the Defendants. Third party beneficiary status, in the Court's view, creates a *cause of action*, but just as a party's cause of action for breach of contract against a foreign defendant does not necessarily justify the exercise of the forum state court's jurisdiction over that defendant, *see Burger King Corp. v. Ruzeqics*, 471 U.S. 462, 478 (1985), so too does a finding of third party beneficiary status not suffice to establish personal jurisdiction over a foreign defendant. The jurisdictional analysis remains separate and a plaintiff must still satisfy the three-step test for specific jurisdiction laid out in *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006).[4] A finding of third party beneficiary status might well be necessary to satisfy that test in a particular case, but it is

---

[4] In this regard, it is worth reiterating the facts found by this Court as to the loan agreement between SDG and ABT of which Fire Eagle is allegedly a third party beneficiary:

> ABT is a Texas bank and all negotiations over the ABT loan were conducted in Texas, with payments delivered into Texas. The ABT loan is governed by Texas law, was secured by a first lien on property located in Travis County, Texas, and according to the loan documents was performable in Grayson County, Texas. The loan was also secured by various limited guaranties executed at different times by Defendants, all of whom are Texas residents. These guaranties are also governed by Texas law and are performable in Grayson County, Texas.

March 25th Order, at *2. Plaintiff has brought forward no new evidence to cause the Court to reconsider these found facts.

clearly not sufficient to do so alone.

Most importantly, it is clear that under the relevant test, Fire Eagle is not a third party beneficiary of the ABT-SDG loan agreement.[5] To create a legal obligation enforceable by the beneficiary there must be certainty as to the benefit to accrue to the beneficiary. *MCI Telecommunications*, 995 S.W.2d at 651. Plaintiff cannot point to any benefit that accrued to it as a result of the SDG-ABT loan agreement. The only provision of that agreement that bears on Fire Eagle at all is the requirement that SDG expend the funds provided by Fire Eagle first, before dipping into the funds provided by ABT. However this provision is characterized, it is not "clearly" a benefit to Fire Eagle, and the Court accordingly rejects Plaintiff's contention that it is a third party beneficiary of the SDG-ABT loan agreement.

It may be the case—though the Court does not decide the issue—that under relevant Texas law, ABT is a third party beneficiary of the SDG-Fire Eagle loan. Even if true, however, the Court finds this fact to be irrelevant. Plaintiff has offered no argument in support of the proposition that this fact alone would subject the Defendants to this Court's jurisdiction. In fact, the Court is skeptical that Plaintiff could show that under such circumstances it even has a cause of action against either ABT, its borrower, or that borrower's guarantors.

As Plaintiff has put forward no new evidence or argument suggesting that the two loan

---

[5] The Court presumes that in analyzing whether Fire Eagle is a third party beneficiary in this case, it need only look to the SDG-ABT loan agreement and not to the SDG-Fire Eagle loan agreement, since Fire Eagle cannot be a third party beneficiary of a contract to which it is a party. *See MCI Telecommunications*, 995 S.W.2d at 651 (noting that a third party beneficiary may only "recover on a contract made *between other parties*") (emphasis added). Even if the Court were to include the provisions of the SDG-Fire Eagle loan agreement in its analysis the outcome would be no different, since the provisions of that loan are even more clearly not beneficial to Fire Eagle.

agreements are "one transaction,"[6] the Court accordingly denies the instant motion to this extent.

**C. Bischoff Presentation**

The second grounds upon which Plaintiff urges reconsideration of the motion to dismiss concerns a presentation Richard Bischoff made to representatives of Fire Eagle in October 2004, as SDG began to encounter financial difficulties. Bischoff approached Fire Eagle by letter with a

---

[6] In the March 25th Order, the Court noted that

> absent some evidence that the parties intended the loans to be one transaction—such as negotiations between ABT and Fire Eagle, an executed partnership agreement, or indeed, any communication at all between the two lenders—the Court cannot, on the strength of such a provision [i.e., the provision subordinating Fire Eagle's lien] alone, find that Defendants' undisputed contacts with Louisiana for purposes of negotiating and servicing the Fire Eagle loan support the exercise of this Court's jurisdiction over Defendants on a claim arising from the ABT loan.

March 25th Order, at *9. Attached to the instant motion is an Intercreditor Agreement between ABT and Fire Eagle, in which Fire Eagle agrees that it will subordinate its lien on the golf course to ABT's. *See* Mot. at Ex. A (Rec. Doc. 87). This document was not among the 323 pages of exhibits attached to Plaintiff's opposition to the original motion. It was mentioned only once in Plaintiff's memorandum, and then only as one item in a five-item list of the terms of the SDG-Fire Eagle loan. *See* Opp. at 20 (Rec. Doc. 53). As such, this Intercreditor Agreement is not properly before the Court on this motion, since the document could have been presented in opposition to the original motion to dismiss. But even had it been attached to Plaintiff's original opposition, it would not have affected the outcome of that motion, nor would considering it on this motion cause the Court to reconsider the March 25th Order. Obviously, the existence of the Intercreditor Agreement suggests that there were "communications" between ABT and Fire Eagle. But the Court's March 25th Order did not rest upon the absence of any communication between the two lenders, but rather on the absence of any evidence that the two loans were intended to be one transaction. As the Court noted, "Such provisions, setting out the priority of lenders, are not uncommon in multi-party financing deals. Presumably, Fire Eagle priced its junior status into its terms for the loan." March 25th Order, at *9. Further, the terms of the Intercreditor Agreement itself support the conclusion that the two loans are not one transaction, since in Section 4.7 of the agreement, entitled "No Partnership Responsibilities," the document goes on at length to delineate the ways in which "execution of this Agreement shall not create or be construed as creating a partnership, joint venture or other joint enterprise between Senior Lender and Junior Lender," Mot. at Ex. A (Rec. Doc. 86) (Intercreditor Agreement, p. 7), language that certainly cuts against any inference that the two loans were "one transaction."

8

menu of proposals to assist its faltering business, including a proposal that Fire Eagle assume the ABT loan and release both SDG's collateral and the Defendants' guaranties. Fire Eagle rejected the proposal, however, and on August 1, 2005, SDG filed for Chapter 11 bankruptcy protection in the Western District of Texas. Subsequently, Fire Eagle purchased the ABT loan after a competitive bidding process on October 6, 2006.

The Court rejected the argument that this presentation sufficed to justify the Court's exercise of jurisdiction over the Defendants, since "the proposal sent to Fire Eagle is signed by Richard Bischoff only; none of the other guarantors appear anywhere in the document. . . . Plaintiff has offered no evidence that any person other than Bischoff—who is not a party to the instant motion—had any involvement in making the proposal." *Id.* at *9. While not deciding the issue, the Court noted that it was "skeptical that a proposal to assume loans and wipe out guaranties, sent into Louisiana and rejected by the recipient, is sufficient to show that the Defendants had minimum contacts with the forum state sufficient to support a suit on those same guaranties." *Id* at 9-10.

In the instant motion, however, Plaintiff does produce new evidence suggesting that at least some of the Defendants participated in making the proposal to Fire Eagle, in the form of a deposition of Defendant Robert West.[7] Since all factual conflicts are to be resolved in Plaintiff's favor for purposes of a motion to dismiss, the Court will assume for present purposes that the Defendants participated in making the presentation to representatives of Fire Eagle.

---

[7] Arguably, this deposition was available by the time the Court issued the March 25th Order, since the deposition was taken on January 27, 2009, and the Court throughout this matter has freely granted leave to file supplemental briefing. However, because the deposition was not taken until after the hearing date on the motion to dismiss, the Court will consider this new evidence on the motion to reconsider.

9

Resolving this factual conflict does not end the matter, however, since the Court must still determine whether or not this contact suffices to establish that the Court has specific jurisdiction over the Defendants. The Court concludes that even with all factual conflicts resolved in Plaintiff's favor, Defendants' conduct does not suffice to establish that they purposefully availed themselves of the protections of the forum state. An exchange of communications in the course of developing a contract does not necessarily constitute purposeful availment. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Patterson v. Dietze*, 764 F.2d 1145, 1147 (5th Cir. 1985). So far as the evidence shows, this presentation was the only time that the Defendants reached out to Fire Eagle for some purpose relating to the SDG-ABT loan, as opposed to the SDG-Fire Eagle loan. While the number of contacts with the forum state is not determinative, it is one of the relevant factors to be considered within the totality of the circumstances in assessing the propriety of exercising jurisdiction over a non-resident. *See Stuart v. Spademan*, 772, F.2d 1185, 1192 (5th Cir. 1985). It is also undisputed that the physical meeting between Bischoff and the Fire Eagle representatives took place in Texas, not in Louisiana, which is a relevant factor. The most important factor for the Court, however, is that no contract was ultimately signed between these parties. While not by itself dispositive of the question, this fact is nonetheless strong evidence that the Defendants' contact with the forum state was sporadic, especially since Plaintiff has pointed to no evidence that the presentation was followed by a course of negotiation, a draft agreement, or anything but a flat rejection of the Defendants' proposal.[8] The Court must reject Plaintiff's contention that since "the eventual

---

[8] In its opposition to the original motion, Plaintiff argued that Stephen Gurasich sent two "followup" letters, which were cc'ed to Donald Walden and Robert West, after the original presentation. These letters were actually sent in January and February 2006, after SDG had

request by the guarantors through Bischoff was ultimately the result which occurred," Mot at 3 (Rec. Doc. 87), that suffices to establish this Court's jurisdiction over Defendants. Nor does Fire Eagle's unilateral purchase of the ABT loan in a competitive bidding process constitute purposeful availment. *See Stuart*, 772 F.2d at 1190 ("The unilateral activity of those who claim some relationship with a nonresident defendant, however, cannot satisfy the requirement of contact with the forum state.") (citations omitted). After assessing the totality of the circumstances, the Court is convinced that the Bischoff presentation was a sporadic, intermittent contact and, as such, does not constitute purposeful availment of the protections of the forum state such that the Court is justified in exercising jurisdiction over the Defendants.

### III. CONCLUSION

Plaintiff's argument throughout the case might fairly be characterized as "close enough." Plaintiff admits that the "titles on documents and references on correspondence may have appeared to address only the original Fire Eagle loan" and not the SDG-ABT loan that is the basis of the suit, Mot. at 18-19, but argues that the Court should bootstrap those contacts onto an unrelated loan anyway. Plaintiff admits that it rejected the Bischoff presentation, but argues that since the ultimate result—Fire Eagle purchasing the ABT loan—was what the Defendants sought in the first place, the Court should overlook the fact that Fire Eagle rejected this proposal and

---

entered into Chapter 11 bankruptcy, and they invited Fire Eagle to bid on the golf course in the bankruptcy proceeding. *See* Opp. at Ex. 53, 54 (Rec. Doc. 53). As it did in the March 25th Order, the Court rejects the argument that these letters constitute a "followup" to the Bischoff presentation. The Court is required to resolve all factual conflicts in Plaintiff's favor, but is not required to manufacture a factual conflict where none exists. There can be no doubt, based on a facial reading of these two letters, that they do not constitute a "followup" to the Bischoff presentation or any sort of continuing negotiation pursuant to the Defendants' long-rejected proposal to Fire Eagle.

11

waited to purchase the loan until it could buy it in a bankruptcy proceeding. Close enough is simply not good enough in a matter as fundamental as ensuring that this Court's exercise of its jurisdiction comports with due process. Accordingly, the instant motion is **DENIED**.

New Orleans, Louisiana, this 11th day of May, 2009.

**KURT D. ENGELHARDT**
**United States District Judge**